## KELLY *v.* PITTSBURGH.

1. Although differing from proceedings in courts of justice, the general system of procedure for the levy and collection of taxes, which is established in this country, is, within the meaning of the Constitution, due process of law.

2. A State has the power to determine what portions of her territory shall, for local purposes, be within the limits of a city and subject to its government, and to prescribe the rate of taxation at which such portions shall be assessed.

3. A party is not deprived of his property without due process of law by the enforced collection of taxes merely, because they, in individual cases, work hardships or impose unequal burdens.

ERROR to the Supreme Court of the State of Pennsylvania. The facts are stated in the opinion of the court.

*Mr. Daniel Agnew* and *Mr. Albert N. Sutton* for the plaintiff in error.

*Mr. George Shiras, Jr., contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The plaintiff in error, James Kelly, is the owner of eighty acres of land, which, prior to the year 1867, was a part of the township of Collins, in the county of Alleghany and State of Pennsylvania. In that year the legislature passed an act by virtue of which, and the subsequent proceedings under it, this township became a part of the city of Pittsburgh. The authorities of the city assessed the land for the taxes of the year 1874 at a sum which he asserts is enormously beyond its value, and almost destructive of his interest in the property. They are divisible into two classes ; namely, those assessed for State and county purposes by the county of Alleghany, within which Pittsburgh is situated, and those assessed by the city for city purposes.

Kelly took an appeal, allowed by the laws of Pennsylvania, from the original assessment of taxes to a board of revision, but with what success does not distinctly appear. The result, however, was unsatisfactory to him, and he brought suit in the Court of Common Pleas to restrain the city from collecting the tax. That court dismissed the bill, and the decree having been

affirmed on appeal by the Supreme Court, he sued out this writ of error.

The transcript of the record is accompanied by seven assign-ments of error. All of them except two have reference to matters of which this court has no jurisdiction. Those two, however, assail the decree on the ground that it violates rights guaranteed by the Constitution of the United States. As the same points were relied on in the Supreme Court of the State, it becomes our duty to inquire whether they are well founded. They are as follows : —

*First,* The Supreme Court of Pennsylvania erred in sustain-ing the authority of the city of Pittsburgh to assess and col-lect taxes from complainant's farm lands for municipal or city purposes, such exercise of the taxing power being a violation of rights guaranteed to him by article 5 of amendments to the Constitution of the United States.

*Second,* The Supreme Court of Pennsylvania erred in sus-taining the authority of the city of Pittsburgh to assess and collect taxes from complainant's farm lands for municipal or city purposes, such exercise of the taxing power being a vio-lation of rights guaranteed to him by art. 14, sect. 1, of the amendments to the Constitution of the United States.

As regards the effect of the fifth amendment of the Consti-tution, it has always been held to be a restriction upon the powers of the Federal government, and to have no reference to the exercise of such powers by the State governments. See *Withers* v. *Buckley,* 20 How. 84 ; *Davidson* v. *New Orleans,* 96 U. S. 97. We need, therefore, give the first assignment no fur-ther consideration. But this is not material, as the provision of sect. 1, art. 14, of the amendments relied on in the second assignment contains a prohibition on the power of the States in language almost identical with that of the fifth amendment. That language is that " no State shall . . . deprive any person of life, liberty, or property without due process of law."

The main argument for the plaintiff in error — the only one to which we can listen — is that the proceeding in regard to the taxes assessed on his land deprives him of his property without due process of law.

It is not asserted that in the methods by which the value of

his land was ascertained for the purpose of this taxation there was any departure from the usual modes of assessment, nor that the manner of apportioning and collecting the tax was unusual or materially different from that in force in all communities where land is subject to taxation. In these respects there is no charge that the method pursued is not due process of law. Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is, and always has been, due process of law.

The tax in question was assessed, and the proper officers were proceeding to collect it in this way.

The distinct ground on which this provision of the Constitution of the United States is invoked is, that as the land in question is, and always has been, used as farm land, for agricultural use only, subjecting it to taxation for ordinary city purposes deprives the plaintiff in error of his property without due process of law. It is alleged, and probably with truth, that the estimate of the value of the land for taxation is very greatly in excess of its true value. Whether this be true or not we cannot here inquire. We have so often decided that we cannot review and correct the errors and mistakes of the State tribunals on that subject, that it is only necessary to refer to those decisions without a restatement of the argument on which they rest. *State Railroad Tax Cases,* 92 U. S. 575; *Kennard* v. *Louisiana,* id. 480; *Davidson* v. *New Orleans,* 96 id. 97; *Kirtland* v. *Hotchkiss,* 100 id. 491; *Missouri* v. *Lewis,* 101 id. 22; *National Bank* v. *Kimball,* 103 id. 732.

But, passing from the question of the administration of the law of Pennsylvania by her authorities, the argument is, that in the matter already mentioned the law itself is in conflict with the Constitution.

It is not denied that the legislature could rightfully enlarge the boundary of the city of Pittsburgh so as to include the land. If this power were denied, we are unable to see how such denial could be sustained. What portion of a State shall

be within the limits of a city and be governed by its authorities and its laws has always been considered to be a proper subject of legislation.    How thickly or how sparsely the territory within a city must be settled is one of the matters within legislative discretion.    Whether territory shall be governed for local purposes by a county, a city, or a township organization, is one of the most usual and ordinary subjects of State legislation.

It is urged, however, with much force, that land of this character, which its owner has not laid off into town lots, but insists on using for agricultural purposes, and through which no streets are run or used, cannot be, even by the legislature, subjected to the taxes of a city, — the water tax, the gas tax, the street tax, and others of similar character.    The reason for this is said to be that such taxes are for the benefit of those in a city who own property within the limits of such improvements, and who use or might use them if they choose, while he reaps no such benefit.    Cases are cited from the higher courts of Kentucky and Iowa where this principle is asserted, and where those courts have held that farm lands in a city are not subject to the ordinary city taxes.

It is no part of our duty to inquire into the grounds on which those courts have so decided.    They are questions which arise between the citizens of those States and their own city authorities, and afford no rule for construing the Constitution of the United States.

We are also referred to the case of *Loan Association* v. *Topeka* (20 Wall. 655), which asserts the doctrine that taxation, though sanctioned by State statutes, if it be for a public use, is not an unauthorized taking of private property.

We are unable to see that the taxes levied on this property were not for a public use.    Taxes for schools, for the support of the poor, for protection against fire, and for water-works, are the specific taxes found in the list complained of.    We think it will not be denied by any one that these are public purposes in which the whole community have an interest, and for which, by common consent, property owners everywhere in this country are taxed.

There are items styled city tax and city buildings, which, in

the absence of any explanation, we must suppose to be for the good government of the city, and for the construction of such buildings as are necessary for municipal purposes. Surely these are all public purposes; and the money so to be raised is for public use. No item of the tax assessed against the plaintiff in error is pointed out as intended for any other than a public use.

It may be true that he does not receive the same amount of benefit from some or any of these taxes as do citizens living in the heart of the city. It probably is true, from the evidence found in this record, that his tax bears a very unjust relation to the benefits received as compared with its amount. But who can adjust with precise accuracy the amount which each individual in an organized civil community shall contribute to sustain it, or can insure in this respect absolute equality of burdens, and fairness in their distribution among those who must bear them?

We cannot say judicially that Kelly received no benefit from the city organization. These streets, if they do not penetrate his farm, lead to it. The water-works will probably reach him some day, and may be near enough to him now to serve him on some occasion. The schools may receive his children, and in this regard he can be in no worse condition than those living in the city who have no children, and yet who pay for the support of the schools. Every man in a county, a town, a city, or a State is deeply interested in the education of the children of the community, because his peace and quiet, his happiness and prosperity, are largely dependent upon the intelligence and moral training which it is the object of public schools to supply to the children of his neighbors and associates, if he has none himself.

The officers whose duty it is to punish and prevent crime are paid out of the taxes. Has he no interest in maintaining them, because he lives further from the court-house and police-station than some others?

Clearly, however, these are matters of detail within the discretion, and therefore the power, of the law-making body within whose jurisdiction the parties live. This court cannot say in such cases, however great the hardship or unequal the burden,

.that the tax collected for such purposes is taking the property of the taxpayer without due process of law.

These views have heretofore been announced by this court in the cases which we have cited, and in *McMillen* v. *Anderson,* 95 U. S. 37.

In *Davidson* v. *New Orleans* (*supra*) the whole of this subject was very fully considered, and we think it is decisive of the one before us.

                                        *Judgment affirmed.*