# WAGONER *v.* EVANS.

# EVANS *v.* WAGONER.

APPEALS FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

Nos. 252, 262.  Submitted April 29, 1898. — Decided May 23, 1898.

*Thomas.* v. *Gay*, 169 U. S. 264, affirmed and followed to the point that " the act of the legislative assembly of the Territory of Oklahoma, of March 5, 1895, which provided that ' when any cattle are kept or grazed or any other personal property is situated in any unorganized country, district or reservation of this Territory, such property shall be subject to taxation in the organized county to which said country, district or reservation is attached for judicial purposes,' was a legitimate exercise of the Territory's power of taxation, and when enforced in the. taxation of cattle belonging to persons not resident in the Territory grazing upon Indian reservations therein, does not violate the Constitution of the United States."

Prior to the passage of that act there existed no power in the authorities of Canadian County to tax property within the attached reservation; and, as such authority was first given by that act, it could only be validly exercised on property subjected to its terms after its enactment.

Taxes, otherwise lawful, are not invalidated by the fact that the resulting benefits are unequally shared.

In November, 1895, D. Wagoner, W. T. Wagoner and S. B. Burnett filed in the district court of Canadian County, Territory of Oklahoma, a petition against Neil W. Evans, as treasurer, and I. M. Cannon, as sheriff, and Osborn, Hutchinson and Vasey, as county commissioners of Canadian County, asking to enjoin the said defendants from levying or collecting certain taxes upon herds of cattle and horses belonging to the complainants, and by them kept and grazed on the Kiowa and Comanche Indian reservation which is a part of the Territory of Oklahoma, but not embraced in any organized county of that Territory. In pursuance of. the act of Congress of May 2, 1890, c. 182, 26 Stat. 81, that Indian reservation was attached to Canadian County for judicial purposes, and by an act of March· 5, 1895, of the territorial legislature, the authorities of any county to which any reservation had been

attached for judicial purposes were authorized to assess taxes upon any cattle or other personal property kept or situated within such reservation.   The petition alleged that, in pursuance of the said act, the defendants were proceeding to assess and collect taxes for the years 1892 to 1895, both inclusive; that, for several reasons set forth in the petition, the said act of March 5, 1895, was invalid, and that said defendants were proceeding without warrant of law.   To this petition a demurrer was filed, which was overruled, and thereupon the defendants filed answers, admitting that they were proceeding to levy and collect taxes as complained of in the petition, and alleging that their action in the premises was in pursuance of a valid statutory enactment of the territorial legislature.

An agreed statement of the facts was filed, and the cause was submitted to the court upon the petition, answer and statement of facts, and thereupon the court found that the defendants were fully authorized by the laws of Oklahoma Territory to collect from the petitioners taxes for territorial and judicial purposes for the year 1895 only, but that they were without authority to collect from the petitioners taxes for county, township or other than the territorial and judicial purposes.   It was, therefore, decreed by the court that the defendants were authorized and permitted to collect those parts of the tax which were for territorial and judicial purposes for the year 1895 only, and enjoined them from collecting any part of the taxes which were for county, township or other than territorial or judicial purposes, and no taxes whatever for the years 1892, 1893 and 1894.

From this decree both parties appealed to the Supreme Court of the Territory of Oklahoma, which, on September 4, 1896, affirmed the decree of the District Court.

From that decree of affirmance both parties were allowed an appeal to this court by the Chief Justice of the Supreme Court of the Territory.

*Mr. A. H. Garland* and *Mr. R. C. Garland* for Wagoner and others.

*Mr. Fred. Beall, Mr. Amos Green* and *Mr. C. M. Green*
for Evans and others.

Mr. Justice Shiras, after stating the case, delivered the
opinion of the court.

The appeal of Wagoner and others, owners of cattle kept
by them on the Indian reservation attached to Canadian
County, brings up the same questions which were considered
and determined by us at the present term in the case of
*Thomas* v. *Gay*, 169 U. S. 264.

That was an appeal from the Supreme Court of the Terri-
tory of Oklahoma, involving the validity of the territorial
act of March 5, 1895, c. 43, which subjected cattle, kept and
grazed in any unorganized country, district or reservation, to
taxation in the organized county to which said country, dis-
trict or reservation is attached for judicial purposes, and it
appears in the present record that the Supreme Court of the
Territory regarded that case as identical in principle with the
present one. Our examination of the records in the two cases
has brought us to the same conclusion.

We therefore deem it unnecessary to again discuss at
length questions so recently disposed of. The main con-
tentions are that by reason of the treaty relations existing
between the United States and the Indian tribes resident on
the reservations it is not competent for the territorial legisla-
ture of Oklahoma to subject cattle within those reservations
to taxation, even although such cattle are owned by persons
other than Indians; and that the legislature of Oklahoma
cannot validly empower the authorities of an organized county
to tax personal property situated in a reservation attached to
such county for judicial purposes.

In *Thomas* v. *Gay* it was held that there was nothing in
the treaties between the United States and the Indians
occupying these reservations which disabled the United
States from bringing the reservations within the limits of the
Territory of Oklahoma; that taxing personal property of
persons other than Indians, and situated within the reserva-

tion, did not impair the rights of person or property pertaining to the Indians; and that the taxation of cattle kept for grazing purposes upon the reservations, under leases duly authorized by act of Congress, was not a violation of the rights of the Indians, nor an invasion of the jurisdiction and control of the United States over them and their lands.

No additional fact is presented to distinguish the present case from that one, in the particular now under consideration, except that the United States authorities made it a condition on which the owners of cattle should have a right to obtain grazing leases from the Indians that they should employ Indians in herding their cattle. It is said that the purpose of that condition was to alienate the Indians from their tribal relations and to incline them to peaceful pursuits. Such may have been the object, but we are unable to see that such a clause in these grazing leases has any bearing on the power of the Territory to exercise the power of taxation. It is, indeed, contended that to permit the Territory to tax the cattle would tend to discourage the making of such leases, and thus deprive the Indians of the advantages coming to them. This seems to us too indirect and far-fetched an incident to affect our conclusions.

In *Thomas* v. *Gay* it was further held that the power to legislate delegated to the territorial legislature included the right to pass and enforce laws for the assessment and collection of taxes; that the act of March 5, 1895, was a valid enactment, under which it was competent for the taxing authorities of an organized county to levy and collect taxes on personal property situated within the attached reservations, and belonging to other persons than Indians.

These considerations cover and dispose of the contentions urged on behalf of the owners of the property taxed, and their appeal is accordingly dismissed.

It remains to consider the appeal of the taxing authorities of Canadian County.

They object, in the first place, to that portion of the decree below which restrains them from the collection of taxes for the years 1892, 1893 and 1894. They point to a provision

contained in the act of March 5, 1895, enabling the special assessor to assess or reassess property that at any time has, by oversight or negligence, or for any other cause, escaped taxation; and they contend that the act of 1895 was an amendatory statute, and intended to cure a supposed defect in the then existing laws, and cases are cited in which it has been held that such curative statutes can have a retrospective effect, and enable the authorities to assess and collect taxes on property which should have been theretofore assessed.

It is sufficient to say that, prior to the passage of the act of March 5, 1895, there existed no power in the authorities of Canadian County to tax property within the attached reservation. Such authority was first given by that act, and could only be validly exercised on property subjected to its terms after its enactment.

Another objection on behalf of the county officers to the decree below appears to us to be well taken. It respects that feature of the decree which restricts the collection of taxes for the year 1895 to those imposed only for territorial and judicial purposes, and forbids the collection of taxes imposed for county purposes.

The same question arose in the case of *Thomas* v. *Gay*, and the conclusion there reached, upon an examination of the authorities, both state and federal, was, that it cannot be maintained that those whose cattle are within the protection of the laws of Oklahoma, but are situated on a reservation, receive no benefit from the expenditures of public moneys in the organized county to which the reservation is attached. Cases cited, wherein the power of municipal organizations to tax property outside of their boundaries has been denied, are not applicable when the power is conferred by a general law, enacted by a legislature having jurisdiction over the subject. Nor are taxes, otherwise lawful, invalidated by the allegation, or even the fact, that the resulting benefits are unequally shared.

*The appeal is sustained in this particular, and the decree of the Supreme Court of the Territory is reversed, and the cause remanded to that court with directions to reverse*

Statement of the Case.

*the decree of the District Court in so far as it restrains the county authorities from collecting taxes for county purposes for the year 1895, and to affirm the rest of that decree. The costs in No. 252 to be paid by the appellants, and in No. 262 by the appellees.*