THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY *et al.* v. S. G. CLARK, *as County Treasurer, et al.*

**No. 11316.**

TAXATION—*Fire-tax Law Invalid.* Chapter 263, Laws of 1895 (Gen. Stat. 1897, ch. 170), providing for the levy of a fire tax, and which excludes the property of railroad companies on which such tax is levied from the benefit and protection which the law should afford, is invalid.

Error from court of appeals, southern department; A. W. DENNISON, B. F. MILTON, and M. SCHOONOVER, judges. Opinion filed October 7, 1899. Reversed in part and affirmed in part.

Railway Co. v. Clark.

*A. A. Hurd, O. J. Wood*, and *W. Littlefield*, for plaintiffs in error.

*A. A. Godard*, attorney-general, *A. C. Dyer*, and *F. Dumont Smith*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : This was a proceeding to enjoin the collection of a special fire tax levied by the county commissioners of Edwards county upon railroad property located in three townships of that county. In two of the townships a levy of two mills was made, and in the other the levy was one mill on the dollar. The contention of the railway company is that chapter 263, Laws of 1895 (Gen. Stat. 1897, ch. 170), discriminates against railroad companies by excluding their property from the benefits provided ; that the tax is not equal and uniform, as the constitution requires ; that the enforcement of the tax is an attempt to deprive them of property without due process of law ; that it denies to them the equal protection of the law, and is therefore void.

The act provides that the county commissioners may levy a fire tax on the property of the county, and in addition thereto may levy a like tax in each or any of the townships of the county. The township trustee is required to make a map of his township and subdivide it into suitable and convenient fire districts ; and if there is a railroad in the district, he is to divide his township, where it is possible, so that the line of the district shall come to the line of the right of way, but shall not cross the railroad. The road overseers are made fire overseers, and on them is devolved the duty of breaking, plowing, mowing or burning fire-breaks. The law appears to prescribe

two methods for protection against fire—one, where there is no railroad, as provided in section 5, where at a certain time the overseer is required to plow strips on the outside lines of his district six rods apart where there is open prairie, and also in fenced pastures where the owners' consent can be obtained, and to burn the grass between the strips of breaking; the other, which is provided in section 6, where there is a line of railroad, and it is there made the duty of the overseer "to cause to be plowed two strips of at least three furrows each, at least six rods apart, on all open prairie or fenced pasture, with the owners' consent, along the section lines running the nearest parallel with said railway, not nearer than one-quarter of a mile to nor more than two and one-half miles from said railroad, making said strips continuous by running at right angles when necessary to keep within the distance above mentioned, and cause the grass to be carefully burned off between said strips; provided, that where there is open and unoccupied prairie the road overseer may plow and burn said strips running parallel with said railway, not closer than one-quarter of a mile to the said railroad." As will be observed, the act is somewhat crude and inconsistent in its provisions.

Aside from the manifest purpose to exclude railroad property from fire districts to be created, the provision relating to where the fire-guards shall be made are in conflict. First, the act requires fire-guards to be plowed and burned on all exterior lines in the district. In another section, however, it provides that where there is a railroad like fire-guards are to be made on section lines running nearest parallel with the railroad, but which are not to be closer than one-quarter of a mile to the railroad nor more than two

and one-half miles distant therefrom. In order to place fire-guards within the limits mentioned, and make them continuous, they are to run, when necessary, at right angles on section lines, but there is an express provision that in no instance are they to be made closer than one-quarter of a mile to a railroad. The exterior limits of a fire district which extend to and run parallel with the right of way would ordinarily be only fifty feet distant from the railroad, and according to one provision there would be a fire-guard thereon, but by the other provision it would be one-quarter of a mile away, and might be two and one-half miles. Then, again, no provision is made for placing the tax upon the tax books nor that it shall become a lien at any time upon the property taxed, nor does it provide that it shall be collected the same as other taxes are collected. No provision is made for the collection of this tax in money, but persons residing in the district may work out the tax under the direction of the road overseer at specified rates of compensation. How far these omissions might affect the validity of the law in the absence of other defects we need not determine. It appears, however, from the provisions referred to, that railroad property is excluded from districts organized for fire protection, and that the fire-guards are so remote as to afford the company but little, if any, protection from fire. Much of the property of the company is of such nature as may be injured or consumed by fire, and what protection would a fire-guard located two and one-half miles from the property afford? Or even if it were but a quarter of a mile away, which is as near as it may be made? It is well known that fires are sometimes started from locomotives used on the railroads, and that railroad companies are required to

respond in damages for property destroyed by fire originating in that way. This act, as we have seen, affords no protection to railroad companies' property, neither does it afford any protection to property destroyed by fire originating in the operation of the railroads, and for which the companies may be held responsible. It may have been the theory that railroad companies had provided, and would provide, their own protection in their own way, but being required to do this, the tax is more burdensome on them than on other taxpayers in the township. As some of the taxpayers appear to have been purposely excluded from the benefit and protection of the law, the tax, therefore, lacks that equality and uniformity essential to its validity. It is a discrimination against one taxpayer in favor of others, and is a denial of the equal protection of the law required by both state and federal constitutions. Absolute equality in taxation is, of course, unattainable, but a law, the manifest purpose and legitimate result of which is discrimination and inequality, cannot be sustained. As to the fire tax the judgment of the court of appeals will be reversed and the judgment of the district court will be affirmed.

The other question presented by the record, the validity of the state delinquent tax, received consideration in *Railway Co. v. Clark*, immediately following. That tax is held to be valid, and for the reasons stated in that case the judgment of the court of appeals with respect thereto is affirmed.