**SIX COMPANIES, Inc., v. STINSON, State Inspector of Mines, et al.**

No. G-191.

District Court, D. Nevada.

April 28, 1932.

Heller, Ehrman, White & McAuliffe and Thelen & Marrin, all of San Francisco, Cal., for plaintiff.

Gray Mashburn, Atty. Gen., of Nevada, and W. T. Mathews, Dep. Atty. Gen., for defendants.

Richard J. Coffey, Dist. Counsel, Bureau of Reclamation, of Los Angeles, Cal., and H. H. Atkinson, U. S. Atty., of Reno, Nev., amici curiæ.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge, as a Statutory Court.

NORCROSS, District Judge.

This is an action to enjoin defendants from interfering with plaintiff's use of gasoline propelled trucks in the driving of certain tunnels upon the Nevada side of the Colorado river in the carrying out of its contract with the United States for the construction of Hoover Dam.

At the point where the dam is to be erected, the Colorado river flows through a narrow precipitous canyon, the sides of which are of solid rock, and the depth of which approximates 1,500 feet. In order to construct the dam it is first necessary to divert the flow of the river from its normal bed. To accomplish this purpose the contract provides for the construction of four tunnels, two on the Nevada and two on the Arizona side. Each of the tunnels is approximately 4,000 feet in length and is required to be excavated to a diameter of 56 feet. The amount of rock to be blasted and hauled out of the two tunnels and removed from the river channel on the Nevada side is approximately one and one-half million tons.

On November 7, 1931, defendant Stinson, as inspector of mines of Nevada, ordered plaintiff to cease using gasoline propelled trucks in the removal of rock from the said tunnels, claiming the use thereof was in violation of section 4229, Nev. Comp. Laws 1929, forbidding the use of gasoline underground excepting under certain prescribed limitations. As a result of such order this suit was instituted November 13, 1931.

The questions presented for immediate consideration are whether this court has jurisdiction, and, if so, whether plaintiff has made showing sufficient for a temporary injunction. A preliminary restraining order was issued upon the filing of the complaint. By stipulation of the parties, hearing upon the order to show cause why a temporary injunction should not issue was held before the court sitting at San Francisco on January 3, 1932. At the time of such hearing it was further stipulated that the temporary restraining order continue in force pending the filing of additional affidavits and briefs by the respective parties, and that plaintiff's motion for temporary injunction be finally submitted upon such additional affidavits and briefs. An order was entered accordingly. Closing briefs were filed April 14, 1932, and the motion finally submitted.

Plaintiff by its bill of complaint contends for the right of injunctive relief upon several grounds briefly stated as follows:

1. That the state of Nevada is without jurisdiction to enforce its laws within the area in which the said tunnels are being driven, for the reason that on May 26, 1931, the Secretary of the Interior filed in the office of the Governor of the state a map "showing lands embraced within the Boulder Canyon Project Federal Reservation," and that by so filing said map the jurisdiction of the state within the limits so described became ceded to the United States, except for service of civil or criminal process, by virtue of the provisions of an act of the Nevada Legislature, approved February 24, 1921, entitled: "An Act ceding the jurisdiction of this state over certain lands owned or to be acquired by the United States and repealing certain acts relating thereto." Nevada Comp. Laws, §§ 2895–2898.

2. That section 22 of the state act, approved March 24, 1909, entitled: "An Act creating the office of inspector of mines," etc., as amended (Nevada Comp. Laws, § 4229), providing that the "use of gasoline underground is forbidden," except under conditions not material to this case, applies only to mining operations, and that the act of the state Legislature, approved March 25, 1931, entitled: "An Act supplementary," etc. of the Inspector of Mines Act, extending the provisions thereof to "all tunnels, drifts and other underground excavations and workings where persons are employed at work" (Stats. Nev. 1931, c. 167, p. 274), is void because in violation of sections 17 and 21 of article 4 of the State Constitution, in that it attempts to amend other statutes by reference merely, without re-enacting and publishing the same at length; and also is a special law "where a general law can be made applicable," having application only to cases where "employers, contractors and others engaged in the work * * * shall accept and continue under the provisions of the Nevada industrial insurance act." Section 5.

3. That the said act of March 25, 1931, is also void because it violates section 1 of the Fourteenth Amendment of the Constitu-

tion of the United States, in that it is discriminatory and so uncertain and indefinite that it would deprive plaintiff of its property without due process of law.

4. That the plaintiff in performing its contract is an instrumentality of the United States, and hence not subject to state police regulations.

Defendants by answer challenge all the legal contentions of plaintiff as above stated, and further contend that the action is in effect one against the state, and for that reason this court is without jurisdiction.

Defendants' position in respect to the legal contentions of plaintiff may be briefly summarized as follows:

1. That the said Boulder Canyon Project Federal Reservation has not been legally created for the reason that the Secretary of the Interior was not empowered by any act of Congress to establish such reservation, nor has Congress by any act accepted the same.

2. That such reservation is not within the purview of the said act of the Nevada Legislature of February 24, 1921.

3. That, if the legal establishment of the reservation be conceded, the laws of the state apply therein until superseded by action of Congress.

4. That the state statute of March 25, 1931, is not violative of the State Constitution, and that in any event the State Mine Inspector Act of 1909 is applicable.

5. That the state statutes sought to be enforced are a valid exercise of the police power of the state and do not invade any rights of the plaintiff guaranteed by the Fourteenth Amendment.

6. That plaintiff is not an instrumentality of the United States in the sense contended.

Not only are the questions raised of serious moment to the parties to the action, but they have been considered of such importance to the national government that through the Department of Justice request has been made and granted to file briefs presenting the views of that Department in respect to the questions in controversy.

Whatever may be the final determination of other questions presented, this court must first determine the challenge to its jurisdiction.

Conceding solely for the purposes of the question of jurisdiction that there is or may be merit in the contentions of plaintiff, then this court has jurisdiction to prevent what in any such case would be an unlawful interference with the operations of plaintiff to its material injury.

In Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 9, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, the rule applicable was stated by the court as follows: "As the bill is framed upon the theory that the act is unconstitutional, and that the defendants, who are public officers concerned with the enforcement of the laws of the state, are about to proceed wrongfully to the complainant's injury through interference with his employment, it is established that the suit cannot be regarded as one against the state." See, also, Scott v. Donald, 165 U. S. 107, 17 S. Ct. 262, 41 L. Ed. 648; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Hopkins v. Clemson College, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243.

The rule applicable in determining the question of the issuance of a temporary injunction is succinctly stated in the recent case of Ohio Oil Company v. Conway, 279 U. S. 813, 49 S. Ct. 256, 73 L. Ed. 972, as follows: "Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted. Love v. Atchison, T. & S. F. R. Co. (C. C. A.) 185 F. 321, 331, 332."

The questions presented are not only of unusual gravity, but it satisfactorily appears that injury to plaintiff would be certain and irreparable if the application be denied and final decree be in its favor. The ultimate determination of the validity of the asserted federal reservation, not only involves the question presented in the instant case, but the right of the state to levy taxes upon private property within the more than one hundred square miles embraced therein—a suit involving that question being now pending; the jurisdiction of state or federal courts respecting certain crimes committed therein, the latter question also being now presented by an indictment returned by the grand jury of this court. Numerous other questions of serious importance readily suggest themselves. Irrespective of any question involving the validity of the reservation or the state hav-

ing relinquished jurisdiction over the whole or any part thereof, the questions of the constitutionality of the state statutes challenge the serious consideration of the court, and are of a character which ordinarily should not be determined upon a preliminary motion.

Plaintiff by its complaint and affidavits in support of its motion has made a showing that it would suffer serious damage if required to suspend operations by means of gasoline propelled trucks. In its complaint and supporting affidavits it contends this damage would amount to $1,500,000, exclusive of other material damage which it would sustain by reason of delay. Its investment in gasoline propelled trucks is alleged to be $300,000. The only other means of removal of this vast tonnage of rock and the transportation of material therein to line the same with cement would be by substitution of electric motive power, which would, not only occasion a very large expense, but would require a temporary suspension of operations and a delay in the completion of the work which it is alleged would occasion an injury, not only to plaintiff, but to the government and state as well. Defendants have met this contention by challenging only the amount of the alleged cost of changing from gasoline to electric motive power, which amount defendants contend would not exceed $150,000, which it is further contended would be offset by other gains not specifically mentioned.

In support of its contention that the state statute sought to be enforced is violative of the Fourteenth Amendment, plaintiff alleges that the conditions under which it is operating its gasoline propelled trucks are safe and do not endanger the lives or imperil the health of its employees; hence the contention that a statute requiring it to adopt some other means than those employed at great expense and material delay would be in effect depriving it of its property without due process of law.

Many affidavits have been filed by the respective parties dealing with the effect of carbon monoxide gas discharged by the gasoline propelled trucks. It is conceded by all parties that concentration of this gas in the air is a menace to persons compelled to inhale the same and may occasion illness or death. Not only have the many affidavits been filed as having a bearing on the constitutional question presented, but also for the bearing they may have on the question of a temporary injunction. Courts may well require a very convincing showing that the lives and health of employees would not be subject to danger, even though the showing was otherwise amply sufficient to justify the order.

Briefly stated, it is plaintiff's contention that prior to use of gasoline trucks it had taken all necessary precautions to prevent danger to its employees from the discharge of carbon monoxide gas as the larger work progressed in driving the tunnels. These precautions in the main consisted of first driving what is called a pilot tunnel in dimensions 12 by 12 feet the entire length of the tunnel as thereafter to be completely constructed. The pilot tunnel was located at or near where later would be the roof of the main bore. At the center, or approximately 2,000 feet from each end, the pilot tunnel had an air connection by means of a so-called adit tunnel in dimensions 10 by 10 feet to the side of the river canyon. These tunnels with the aid of mechanical blowers it is contended were sufficient to keep an ample circulation of pure air, and thus prevent any dangerous concentration of poisonous gas.

Upon completion of the pilot and adit tunnels work was begun to remove the remaining portion of the rock, first working on a face 40 feet high and 56 feet wide in the widest portion, leaving a maximum of 16 feet at the bottom of the tunnel to be later removed.

The numerous affidavits filed have dealt mainly with the question of safety as this major work of driving the tunnels has progressed. For reasons hereinafter stated it will not be necessary to now review these affidavits at length. It is sufficient to state that it is defendants' position that the use of gasoline in underground workings, being dangerous by reason of the poisonous gases produced and the further danger from explosions, fire, or other accidents, the state in prohibiting its use is acting within the lawful exercise of its police powers, and that the wisdom or policy of such laws is exclusively a matter for the Legislature to deal with; hence, to compel compliance therewith could not be an invasion of plaintiff's rights in violation of the Fourteenth Amendment.

In so far as the safety of the men employed in the construction of these tunnels, as it has any bearing on the question of the issuance of a temporary injunction, is sufficient to say, in view of the changed conditions from those existing at the time the motion was first presented, that the position of defendants respecting the then existing situation is substantially as stated in the affidavit of Letson Balliet, a civil and mining engineer, of date January 18, 1932, and filed on the

part of defendants. From that affidavit we quote: "While the methods of ventilation appear to be sufficient and reasonably effective in the tunnels under construction, it is not impossible that the power and light may go off or that a cave in might occur in the ventilation tunnel, adits or pilot tunnels at any moment."

While doubtless the importance of the legal questions presented and the time required to properly present the same was the impelling reason for extending the preliminary restraining order, nevertheless, in view of the fact that such order has been extended by stipulations since November 18, 1931, the court is justified in assuming that defendants have considered the possibility of serious danger from an accidental interruption of the ventilation system as extremely remote. However that may be, in defendants' reply brief filed on March 21st last appears the statement: "We do not question the rule of law cited * * * but we do question the right of plaintiff to prevail here when the question involved, i. e., the use of gasoline underground, is fast becoming moot; and we think that the rule is that this court will not pass upon abstract propositions of law."

Replying to this statement, there appears the following in plaintiff's closing brief:

"Although the main headings of the tunnels have been completed, or practically completed, there still remains to be excavated from these tunnels a section from the floor of each known as the 'invert.' This invert lies in the floors of the tunnels and is approximately sixteen feet thick at its greatest depth and extends for the entire length of the tunnels. A very considerable amount of rock also remains to be excavated from the walls of the tunnels, particularly those portions thereof where the tunnel plugs are to be later constructed. There is therefore a large amount of rock yet to be excavated and removed from these tunnels and it is desired to remove the excavated material by the use of gasoline propelled trucks. * * *

"It will take several months to complete the work of lining the tunnels and plaintiff expects and desires to use continuously gasoline propelled trucks for the purpose of hauling concrete into the tunnels until the lining thereof is completed."

The question, as the court is now called upon to deal with it, is the danger, if any, which exists in using gasoline propelled trucks in further enlarging a completed tunnel the height and width of which now average approximately 40 feet. We do not understand that there is any contention that such danger longer exists.

Plaintiff has made a case for a temporary injunction. It is ordered, therefore, that the motion for a temporary injunction be, and the same hereby is, granted upon giving bond as required for the temporary restraining order.