## MORTON SALT CO. v. CITY OF SOUTH HUTCHINSON et al.

### No. 3446.

Circuit Court of Appeals, Tenth Circuit.

Feb. 8, 1947.

898

HUXMAN, Circuit Judge, dissenting.

Roy C. Davis, of Hutchinson, Kan., and Harvey Wienke, of Chicago, Ill., for appellant.

J. Richards Hunter, of Hutchinson, Kan., (Walter F. Jones and R. Y. Jones, Jr., both of Hutchinson, Kan., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The immediate question for decision is whether we should direct the trial court to issue a preliminary injunction, pending the final disposition of a suit, to permanently enjoin the City of South Hutchinson from selling bonds issued by it for the construction of a waterworks system, on the alleged grounds that the complainant will

be required to pay 46% of the costs of the improvements without receiving any benefits therefrom.

The complainant pleads that it is the owner of described property in Reno County, Kansas, comprising approximately 22% of the total area within the boundaries of the corporate limits of South Hutchinson, with an assessed valuation of $412,670, or approximately 46% of the total assessed value of all property within the corporate limits in the sum of $879,164. It pleads a city election on June 3, 1946, authorizing the issuance of general obligations in the form of bonds aggregating $115,000, to finance a waterworks system; that pursuant to the election and mandate of the voters, the bonds were issued, and pro rata assessment of taxes on all property within the boundaries of the City, including the property of the complainant; that the governing body of the City entered into a contract for the construction of the waterworks system in the sum of approximately $106,467.40. It is specifically averred that the construction plans for the waterworks system do not provide for a supply of water to any of the property owned by complainant for any purposes whatsoever; that the nearest water pipe contemplated by the proposed construction plans terminates about three-quarters of a mile from plaintiff's property; that the additional cost of facilities for furnishing plaintiff's business with an adequate water supply would amount to not less than $70,000, and that the additional cost of furnishing said water to plaintiff is not within the statutory limitation imposed upon the City for such improvements, consequently the waterworks system, when constructed, will neither presently nor in the future, furnish water or any other benefit to plaintiff's property or the nearby dwellings.

It is said that the governing body of the City of South Hutchinson presently intends, and will unless enjoined, register, issue, and sell the bonds in question, which, when issued, will be negotiable and constitute a lien upon all property included within the corporate limits of the City, including the property of the complainant; and that in accordance with the statutes, the County Clerk and County Treasurer of Reno County will be authorized to, and will assess and collect taxes for the payment of the bonds as general obligations of the City; that although burdened with 46% of the costs of the proposed waterworks system, plaintiff will receive no benefit from it, and that therefore the issuance of the bonds and the levy of the taxes to pay for same against the property of complainant is "palpably arbitrary and a plain abuse of power, to the irreparable damage and loss of the plaintiff contrary to the equal protection of the law, and amounts to a taking of property without due process of law." The complainant moved to enjoin the constituted authorities from selling the bonds, pending final disposition of the case, and for permanent injunctive relief. The City moved to dismiss the complaint for failure to state a claim.

Upon consideration of the facts as alleged, the trial court denied any injunctive relief, but before the temporary restraining order was dissolved, we granted a stay pending a hearing and decision here. The trial court did not specifically rule upon the motion to dismiss, but ordered the case calendared for trial after joinder of issues. It was apparently of the opinion however that the complainant could not prevail upon the facts as alleged. Thus, we cannot say that the court held the complaint wholly insufficient to state a claim upon which relief could be granted. In this posture, we must now decide whether, upon the face of the complaint, the trial court abused its discretion in refusing to grant temporary injunctive relief, pending final disposition of the case on its merits.

Manifestly, if the complainant will ever be entitled to injunctive relief, it must have it now, because it will be too late after the bonds are sold and in the hands of purchasers. (See Gen. Statutes of Kansas, 1935, Sec. 10-112.) Furthermore, no other remedy is available to the complainant, either in law or equity.

■ Generally, "If the questions presented in a suit for injunction are grave and difficult, and the injury to the moving party will be certain, great, and irreparable if the motion for the interlocutory injunc-

tion is denied and the final decision is in his favor, while if the decision is otherwise, and the injunction is granted, the inconvenience and loss to the opposing party will be inconsiderable, or probably may be indemnified by a bond, the injunction usually should be granted." Love v. Atchison T. & S. F. R. Co., 8 Cir., 185 F. 321, 331; see also Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972; City of Council Bluffs v. Omaha & C. B. St. R. Co., 8 Cir., 9 F.2d 246; Utah Power & Light Co. v. Pfost, D.C., 52 F.2d 226; Six Companies, Inc. v. Stinson, D.C., 58 F.2d 649; Allen W. Hinkel Dry Goods Co. v. Wichison I. Gas Co., 10 Cir., 64 F.2d 881; Pratt v. Stout, 8 Cir., 85 F.2d 172.

In the cases of Lewis v. City of South Hutchinson, and McMillan v. Montford, et al., 174 P.2d 51, recently decided by the Supreme Court of Kansas, other taxpayers owning property within the city limits of South Hutchinson complained that 46% of the total valuation of the property in the City would not be served by the waterworks system, resulting in irreparable damage and injury to those property owners who would not be served by the improvements. The Kansas court answered that the statutes authorizing municipalities to incur obligations for a waterworks system, or any other public improvement, did not contemplate that all persons charged with the tax burden of the improvements should receive benefits therefrom. It was affirmed that in the absence of statutory limitations upon the power of municipal corporations, courts would not ordinarily interfere with the administrative discretion, unless a clear and convincing showing is made that the proposed action of the municipal officers constituted an arbitrary abuse of power equivalent to fraud or bad faith. And the court was unanimously of the opinion that the allegations of the complaint were insufficient to show that the city officials had abused their power, acted fraudulently, or that their acts were ultra vires. Thus, we have the word of the Supreme Court of Kansas that the procedural steps, pursuant to which the tax was imposed, were regular and within the statutory power of the

taxing authority. This ruling is of course conclusively binding here, but the constitutional question of due process under either the State or Federal Constitutions, Const. Bill of Rights, § 18; U.S.Const.Amend. 14, was neither tendered nor decided by the Kansas court, and it is therefore open here.

In considering the seriousness of the constitutional question proposed by these pleadings, it is well to remind ourselves that the Fourteenth Amendment imposes only "extremely limited" restrictions upon the taxing power of a sovereign state. Wisconsin v. J. C. Penny Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229; Carmichael v. Southern Coal Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 156, 17 S.Ct. 56, 41 L.Ed. 369. The Federal Constitution does not require precise equality or uniformity in taxation—hardships in taxing systems are one of the "imperfections of human things". Louisville & N. R. Co. v. Barber Asphalt Co., 197 U.S. 430, 25 S.Ct. 466, 467, 49 L.Ed. 819; Dane v. Jackson, 256 U.S. 589, 41 S.Ct. 566, 65 L.Ed. 1107; Cooley Taxation, 4th Ed., Vol. 1, Sec. 259.

It is not the judicial province to correct every abuse of legislative taxing power. In the words of Mr. Chief Justice Marshall, "The interest, wisdom, and justice of the representative body, and its relations with its constituents, furnish the only security, where there is no express contract, against unjust and excessive taxation; as well as against unwise legislation generally." Providence Bank v. Billings, 29 U.S. 514, 561, 7 L.Ed. 939; Dane v. Jackson, supra; French v. Barber Asphalt Paving Co., 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879; Cooley, Sec. 67. It is no constitutional defense to a tax that the taxpayer is not directly benefited thereby, or is less benefited than others who pay the same or less tax. Kelly v. Pittsburgh, 104 U.S. 78, 26 L.Ed. 658; Thomas v. Gay, 169 U.S. 264, 280, 18 S.Ct. 340, 42 L.Ed. 740; Houck v. Little River Dist., 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266. For example, "every citizen is bound to pay his proportion of a school tax, although he has no

children, or is not a resident, and this applies also to corporations; of a police or fire tax, although he has no buildings or personal property; or of a road tax although he never used the road. In other words, a general tax cannot be dissected to show that, as to certain constituent parts, the taxpayer receives no benefits. So property within the limits of a municipality is subject to local taxation although it derives little or no benefit from the municipal government." Cooley, Sec. 89, p. 214. The fact of living in an organized society carries with it the obligations to contribute to its general welfare, whether or not the recipient of particular benefits. Furthermore, the legislative determination that the property taxed will be benefited by the public improvement for which it is assessed is ordinarily conclusive. Thomas v. Kansas City Southern R. Co., 261 U.S. 481, 43 S.Ct. 440, 67 L.Ed. 758.

 But, however great the legislative power of taxation, it is not wholly without constitutional limitations. The due process and equal protection clauses of the Constitution do provide some measure of protection against the abusive exaction of a tax. The test of due process, say the courts, is whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. In other words, the query is, what has the state given for which it may ask return. Wisconsin v. J.C. Penny Co., supra. If the tax imposed clearly results in such a flagrant and palpable inequality between the burden imposed and the benefit received that it amounts to an arbitrary taking of property without compensation, it is said to violate the due process guaranty under the Fourteenth Amendment. All of the cases which have affirmed the broad powers of taxation have recognized these limitations, i. e., see Dane v. Jackson, supra; Henderson Bridge Co. v. Henderson City, 173 U.S. 592, 614, 19 S.Ct. 553, 43 L.Ed. 823; Houck v. Little River Dist., supra; Cooley, Sec. 144.

In Kansas City Southern R. v. Road Improvement Dist., 256 U.S. 658, 41 S.Ct. 604, 65 L.Ed. 1151, a tax imposed in the form of local assessments upon the property of a railroad company, based upon a formula wholly different from the one used in determining the tax liability of other landowners in the same taxing district, was nullified as unconstitutional, unequal and discriminatory. Again in Thomas v. Kansas City Southern R. Co., supra, the Supreme Court unanimously nullified a drainage assessment on the property of a railroad company on the grounds that no direct benefits were conferred, and the indirect benefits, if any, were so completely disproportionate and remote as to be grossly discriminatory, hence unconstitutional. The Supreme Court of Kansas has likewise recognized the limitations on the taxing power under the State and Federal Constitutions. In Atchison T. & S. F. R. Co. v. Clark, 60 Kan. 826, 58 P. 477, 478, 47 L.R.A. 77, the Kansas court held that a law creating a taxing district and levying a tax on all property located therein, including property of the Railroad Company, but explicitly excluding such property from the benefits of the tax, was constitutionally invalid. Said the court, "absolute equality in taxation is of course unattainable, but a law the manifest purpose and result of which is discrimination and inequality cannot be sustained."

 The authorities sometimes draw a distinction between a general ad valorem tax levied for the general welfare of the whole community, and a tax in the form of an assessment to finance special improvements designed to benefit the property located within the particular taxing district. And it may be said that the cases wherein the courts have nullified the tax, or the law imposing it, fall within the category of special assessments for benefits to property located within a particular taxing jurisdiction. See McQuillin Munic. Corp. Rev. Vol. 5, Sec. 2165. But whether a tax is so arbitrary, unequal and discriminatory as to deny due process, does not depend upon its legislative definition, form or label. Wisconsin v. J. C. Penny Co., supra. Every burden which the state imposes upon its citizens with the view of revenue for support of its government or any of its political subdivisions, is levied under the

power of taxation, whether under the name of a tax or some other designation. Cooley Constitutional Limitations, 8th Ed., p. 1050.

 Whether the exaction is in the form of a special assessment for a special improvement, or a general tax for the general welfare, the constitutional test is always whether anything is given or offered for that which is taken. Indeed, the underlying purpose for the creation of special taxing districts is to attain a constitutional balance in relationship to benefits conferred for burdens imposed. Cooley Taxation, Vol. 1, Sec. 320.

 The benefits conferred may be direct and tangible, such as the paving of the street in front of taxpayer's residence or business, a water or sewer line to his door; or, it may be indirect and intangible, such as a waterworks or sewer system which, although unavailable to the taxpayer, nevertheless redounds to the benefit of the whole community of which he is a part. Certainly the tax is no less constitutional because the benefit conferred is indirect and intangible.

 The allegation in the complaint to the effect that the taxpayer will be required to pay 46% of the tax burden for a city improvement which will not be available to it, and from which it can receive no benefit, certainly poses a serious constitutional question. We may take judicial notice, even in the face of the complaint, that the proposed waterworks system would redound to the benefit of the whole community, in virtue of its contribution to the health, safety, morals, and general welfare thereof, and that all of the property and people included within the City would be either directly or indirectly benefited thereby. But, whether 46% of the total tax burden for the indirect benefits conferred is so grossly disproportionate and discriminatory as to amount to a taking of property without due process of law, also poses a serious constitutional question which should be decided only after a full and complete hearing. The trial court has not conclusively ruled upon these constitutional questions, and it is not within the scope of this appeal for us to do so. We merely hold that a serious constitutional question is presented which should be decided first by the trial court after a full hearing. Cf. Wilshire Oil Co. v. United States, 295 U.S. 100, 55 S.Ct. 673, 79 L.Ed. 1329; Cone v. Rorick, 5 Cir., 112 F.2d 894.

 If the temporary injunction is not issued, and after a full hearing the tax should be declared unconstitutional, the taxpayer would nevertheless be saddled with its burden—this much is conceded. If, on the other hand, the tax is ultimately declared constitutional, the City can be adequately indemnified against any loss by an appropriate bond. It seems therefore right and just to direct the trial court to enjoin the sale of the bonds until the questions presented by the bill are decided upon their merits, provided the complainant executes a good and sufficient bond, to be approved by the trial court, in the sum of $25,000.00, to indemnify the City for any loss resulting from the issuance of the injunction.

The case is reversed with directions to grant the preliminary injunction, pending final disposition of the case.

HUXMAN, Circuit Judge (dissenting).

In my view, the judgment of the trial court should be affirmed. Our only question is to determine whether the trial court abused its discretion in refusing to enter a temporary injunction. What constitutes an abuse of discretion in such a case has been clearly defined by the Supreme Court in Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972, as follows: "Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted."

That the injury to the company will be certain and irreparable if it ultimately prevails, if the injunction is denied, must be admitted, because when once registered, sold and delivered, these bonds become legal and binding obligations of the city and a

lien upon all the property in the city.[1] On the other hand, while substantial loss could result to the city from the issuance of the injunction, if the company failed to establish its claim of invalidity, the city may be secured against such loss by an adequate bond. The decision in the ultimate, then, turns upon whether the allegations of the complaint present a substantial question as regards the company's contention that the city may not levy an assessment on its property under the circumstances of this case.

For the purpose of this determination, the facts well pleaded in the complaint stand admitted, and are taken as being true. The facts from which the corporation's right to enjoin the sale of these bonds must be established are these: It alleges that it is the owner of property within the City of South Hutchinson which comprises approximately 22% of the total area of the city, and which constitutes 46% of the total assessed value of all property within the city; that these bonds were voted in an amount of $115,000 to finance a waterworks system for the city; that pursuant to the election and mandate of the voters, the bonds were issued and pro rata assessments of taxes on all property within the boundaries of the city, including the property of complainants, was made. The complaint then alleges the letting of the contract and states that such plans do not provide for a supply of water to any of the property owned by the complainant for any purpose whatsoever; that the nearest water pipe contemplated by the plans terminates about three-quarters of a mile from plaintiff's property; that the additional cost of facilities for furnishing such plaintiffs with an adequate water supply would amount to not less than $70,000, and that such additional expenditure is not within the statutory limits imposed upon the city for such improvements, and that consequently the waterworks system when constructed will neither presently nor in the future furnish water or any other benefit to plaintiff's property or the nearby dwellings.

The allegation that the construction will furnish no other benefit to such property or nearby buildings is not a statement of an ultimate fact, but is a conclusion of the pleader, and therefore does not stand as an admitted fact. The sole question, then, is whether there is any substantial legal question whether the Fourteenth Amendment to the United States Constitution prevents the city from taxing the company's property on the same basis as other property is taxed for the construction of this general city improvement under these admitted facts. There is no claim here that the city proceeded in an unwarranted or arbitrary manner, or that it valued the company's property for the purpose of these assessments at a higher valuation than was placed on the property generally. Nor could the plaintiff support such a charge because in the recent case of Lewis v. City of South Hutchinson, 162 Kan. 104, 174 P.2d 51, the Supreme Court of Kansas, in a unanimous opinion, held that the applicable statutes empower the city to construct waterworks and tax the property within the city for the cost thereof. The court also established the validity and regularity of the election and of all of the bond proceedings leading up to the issuance of these bonds. The Kansas court answered every question, save the federal question, that is urged in this case. It specifically held that Kansas Statutes did not contemplate that one must receive a direct benefit from such an improvement before his property could be taxed for the payment thereof. The federal courts are replete with cases holding to the same effect.[2] The majority opinion cites, with apparent approval, all of these authorities to the effect that property within a municipality must bear its share of local taxes although receiving little or no benefit therefrom, including the decision by the Supreme Court in Thomas v. Kansas City Southern R. Co., 261 U.S. 481, 43 S.Ct. 440, 67 L.Ed. 758, to the effect that "the legislative determination that the property taxed

---

[1] See Gen.Statutes of Kan., 1935, Sec. 10-112.

[2] See Gold Hill v. Caledonia Silver Min. Co., C.C.Nev., Fed.Cas.5512, 10 Fed.Cas. 550; Thomas v. Gay, 169 U.S. 264, 18 S. Ct. 340, 42 L.Ed. 740; Louisville & N. R. Co. v. Barber Asphalt Co., 197 U.S.

430, 25 S.Ct. 466, 49 L.Ed. 819; Missouri Pac. R. v. Road Dist., 266 U.S. 187, 45 S.Ct. 31, 69 L.Ed. 237; Kelly v. Pittsburgh, 104 U.S. 78, 26 L.Ed. 658; Illinois Central R. v. Decatur, 147 U.S. 190, 13 S.Ct. 293, 37 L.Ed. 132.

will be benefited by the public improvement for which it is assessed is ordinarily conclusive," but then concludes that the petition presents a substantial legal question whether the company's property, lawfully within the city, may be taxed for such a general purpose authorized by law, in this case, merely because it receives no direct benefit therefrom.

If a corporation or person having no children or not being a resident of the city must nevertheless pay its proportion of the school tax or its proportion of a police or fire tax, although it has no buildings or personal property within the city, or its proportionate share of a road tax, although it never uses the road,[3] I can see no constitutional inhibition, even under the Fourteenth Amendment, which would relieve the plaintiff in this case from its obligation to pay its proportion of the cost of constructing a waterworks system, including sanitary sewers, merely because it receives no direct benefit therefrom. If the company is correct in this position, then every owner of every single lot, parcel or tract in the city in a similar situation may likewise escape taxation for such improvement.

The only cases where the Fourteenth Amendment has been successfully invoked against an assessment for a public improvement where the improvement was authorized by valid statute, are where benefit districts were authorized to construct an improvement for the special benefit of the property within the district. In a number of such cases the federal courts have held that where there was arbitrary, unreasonable or unwarranted action or conduct in the levy of the assessments, or inclusion of property within the district, such as some classes of property being assessed or valued at a different rate than others, or where it clearly appeared that property included in the district could not possibly receive any benefit from the improvement, that then the protection of the Fourteenth Amendment might be invoked. The distinction between such situations and the one presented here is obvious, and needs no amplification.

The plaintiff's property now pays its proportionate share of all city taxes, such as school taxes, police and fire taxes, taxes for salaries of city officials, as well as other taxes for general governmental functions. If its property may not be taxed for this purpose, it is difficult to see how the legality of any of these other taxes on its property can be sustained, because it likewise must pay 46% thereof. It receives no more direct benefit from any of these taxes than it does from the tax for the waterworks. It receives just as much benefit from the waterworks tax as it does from any of these other taxes. Followed to its ultimate conclusion, this would mean that the plaintiff company cannot be taxed for any of these purposes, because it receives no direct benefit from city government. If this is so, its remedy is to seek exclusion from the city limits rather than escape from such taxes by judicial decree. It may not escape its fair proportionate share of the general city taxes so long as it is a part of the city, merely because it receives no direct or special benefit therefrom.

If a benefit is necessary, indirect benefits are sufficient to sustain the legality of general city taxes, fairly and equitably levied against all the property within the city. That is not seriously disputed. As stated, the allegations of the complaint that the company will receive no other benefit from this improvement is not a statement of an ultimate fact, but a conclusion of the pleader. But if it is to be treated as a statement of fact, we take judicial notice that such statement is not correct. Courts take judicial notice of facts which are common knowledge of all men. It needs no proof to inform us that the construction of a waterworks system, with the additional fire protection, improvement in health and sanitation, not only makes the property which has the benefit thereof, but also other property, much more valuable than it was before. The construction of a waterworks system would add substantially to the assessed value of the property benefited thereby. This in itself inures to the benefit of the company's property when further tax

---

3 Cooley on Taxation, Sec. 89, P. 214; Union Transit Co. v. Kentucky, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann. Cas. 493; Wagoner v. Evans, 170 U.S. 588, 18 S.Ct. 730, 42 L.Ed. 1154; Wight v. Police Jury, 5 Cir., 264 F. 705.

levies are fixed. Many other indirect benefits which will follow just as surely could be judicially noted and enumerated.

The crux of this entire controversy is that the plaintiff company is required to pay forty-six per cent of the costs of this improvement. I doubt if this case would be here if the company were called upon to pay only five per cent of the cost of the improvement. But the Fourteenth Amendment's all-enfolding arms may not be protectively wrapped around this plaintiff merely because it pays forty-six per cent of the cost of this improvement. It owns forty-six per cent in value of all the taxable property in the city, and therefore should, under the due process clause, pay forty-six per cent of the cost of the improvement. Due process is satisfied when the same yardstick is applied to all property subject to the cost of an improvement. It would be arbitrary and unwarranted for the city authorities to assess the plaintiff company's property for a less percentage of the cost of this improvement under the admitted facts as pleaded, and they would in such case stand convicted of violating due process in any similar action brought by an aggrieved, qualified taxpayer.

I not only fail to find any abuse of discretion in the trial court's refusal to enter the temporary injunction, but am of the view that it entered a correct judgment.