**SIX COS., Inc., v. STINSON, Inspector of Mines, et al.**

**No. G–191.**

District Court, D. Nevada.

Feb. 15, 1933.

Heller, Ehrman, White & McAuliffe, and Thelen & Marrin, all of San Francisco, Cal., for plaintiff.

Gray Mashburn, Atty. Gen., of Nevada, and W. T. Mathews, Asst. Atty. Gen., for defendants.

Richard J. Coffey, Dist. Counsel, Bureau of Reclamation, of Los Angeles, Cal., and H. H. Atkinson, U. S. Atty., of Reno, Nev., amici curiæ.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge, as a Statutory Court.

NORCROSS, District Judge.

The contention of plaintiff that defendant Stinson, as state inspector of mines, is without authority to compel plaintiff to desist from the use of gasoline-propelled trucks in underground excavations in the carrying out of the contract with the United States for the construction of Hoover Dam and incidental works in the Colorado river, rests upon a number of claims made which were briefly referred to in the opinion on motion for temporary injunction. Six Companies v. Stinson (D. C.) 58 F.(2d) 649.

It is unnecessary to consider and determine all the questions presented in the briefs and oral arguments.

It is plaintiff's contention that it is not subject to the provisions of section 4229, Comp. Laws 1929 of Nevada, prohibiting the use of gasoline underground, and sought to be enforced against it by defendants, for the reasons that said section was originally adopted in violation of the Constitution of the state; that the section, if constitutional, applies only to mining operations; that the act of the state Legislature, approved March 25, 1931 (St. Nev. 1931, c. 167, p. 274), supplementary to the State Mining Inspector Act, extending provisions of the latter act to "tunnels, drifts and other underground excavations and workings," does not extend the provisions of said section 4229, and that if it may be so construed to apply to the work being done by plaintiff in the execution of its contract, said act is void as violative of both the state and federal Constitutions. A reference to said section 4229 of the Comp. Laws discloses that it is set out therein as section 22 of an act approved March 24, 1909 (St. 1909, c. 176), entitled: "An Act creating the office of Inspector of Mines; fixing his duties and powers. * * *."

This act as originally adopted contained thirteen sections. None of these sections contained specific regulations concerning the conduct of mining operations. They provided for the office of inspector of mines, authorized investigations, required the service of notice on owners or operators where dangerous conditions were found to exist, and to notify the Attorney General in the event they were not remedied; required investigations and reports of accidents and matters of a similar character.

The Legislature of 1911 (St. Nev. 1911, c. 201, p. 402) by an act entitled an act to amend the said act of 1909, "by amending section 5 and by adding additional sections thereto," added twenty-eight additional sections to the act, section 2 of which latter act provided for the addition of a section designated section 22, which read: "Use of gasoline underground is forbidden." Of the other twenty-seven sections of this amendatory act, by far the greater number deal with prohibitory provisions or mandatory requirements in the conduct of mining operations. The last section of the act imposes penalties on the person or corporation "operating a mine in this state who fails to comply with the provisions herein set forth or either or any thereof."

We think it may seriously be questioned whether sections of the amendatory act of 1911, adding regulatory provisions and prohibitions in the conduct of mining opera-

tions, are germane to the subject of the original act which subject, as expressed in the title, is: "Creating the office of Inspector of Mines; fixing his duties and powers," etc., within the meaning of section 17, article 4 of the state Constitution, requiring that each law "embrace but one subject, and matters properly connected therewith." In the view taken respecting other questions presented it will be unnecessary to pass upon this question.

Whether the section prohibiting the use of gasoline underground in mines assuming its constitutionality in the respect heretofore mentioned, is applicable to plaintiff in its work in driving tunnels and excavations in compliance with the terms of its contract, is dependent not only on its constitutionality in other respects, but the construction to be placed upon the said act of March 25, 1931 (St. Nev. 1931, c. 167). The title of the latter act reads: "An Act supplementary of an act entitled 'An act creating the office of inspector of mines, fixing his duties and powers; providing for the appointment of a deputy and fixing the compensation of both; requiring certain reports and notices of accidents to be made to said inspector, and defining the duties of the attorney-general and district attorneys in relation to suits instituted by the inspector of mines, approved March 24, 1909,' and all acts amendatory thereof and supplementary thereto, and extending the powers and provisions thereof to the examination and inspection of tunnels, drifts and other underground excavations and workings, where persons are engaged at work, and to the constructors, contractors, subcontractors and others engaged or employed therein or in the operation thereof, and to the duties, obligations, liabilities and penalties imposed by that act; and providing for the appointment of an additional deputy inspector of mines and for his salary and expenses." (Italics ours.)

By section 1 it is provided: "Section 1. All of the powers, obligations, liabilities, penalties and other provisions of an act entitled 'An act * * * approved March 24, 1909,' and of all acts amendatory thereof and supplementary thereto, defining and prescribing the duties, powers and authority of the inspector of mines to enter and examine mines in this state, and matters relating thereto are hereby extended to all tunnels, drifts and other underground excavations and workings where persons are employed at work, so as to authorize, em-

power and require the said inspector of mines to enter, inspect, and examine all tunnels, drifts and other underground excavations and workings in this state in the interest of the safety of persons so employed." (Italics ours.)

By section 2 it is provided: "Sec. 2. All of the requirements, duties, obligations and penalties imposed upon the owner, operator, agent, manager, lessee and/or employee of the mines of this state, in said act prescribed, are hereby extended to and imposed upon the owner, constructor, contractor, subcontractor, * * * and/or employee, as the case may be, of all such tunnels, drifts and other underground excavations and workings where persons are employed at work in this state." (Italics ours.)

By section 3 it is provided: "Sec. 3. All the acts and omissions of the owner, operator, * * * and/or employee of mines which are prohibited or declared unlawful in that act are hereby prohibited and declared unlawful as to the acts and/or omissions of the owner, constructor, contractor * * * and/or employee, as the case may be, of all such tunnels, drifts and other underground excavations. * * *" (Italics ours.)

Section 4 provides for the appointment of an additional deputy inspector of mines and fixes his salary and provides that the same and his expenses are payable out of the "industrial insurance fund."

Section 5 provides: "Sec. 5. This act shall not become effective nor shall said deputy mining inspector be appointed or said expenditures herein authorized paid unless and until the employers, contractors and others engaged in the work, as in this act mentioned, shall accept and continue under the provisions of the Nevada industrial insurance act."

As it is sought to extend restrictions, prohibitions, and penal provisions to be found in certain sections of the said amendatory act of 1911, to tunnels, drifts, and other underground excavations and workings not having to do with strictly mining operations, it must clearly appear from the language of the said act of March 25, 1931, that such was the legislative intent. To do so it will be necessary to construe the words "said act" as used in section 2, and the words "that act" used in section 3, to mean not only the act specifically referred to in section 1 and in the title by date of approval and quoted title, but of all acts amendatory thereof and supplementary thereto. Some very cogent

reason should be found in the act itself why the words "said act" in section 2, and the words "that act" not only appearing in section 3 but also in the title, mean not one particular act but several acts. No substantial reason for such a construction can be found in the act considered in its entirety. The words "and of all acts amendatory thereof and supplementary thereto," appear in the body of the act only in section 1. In this section they are limited by the expression "defining and prescribing the duties, powers and authority of the inspector of mines to enter and examine mines in this state, and matters relating thereto," and the further expression, "so as to authorize, empower and require the said inspector of mines to enter, inspect, and examine * * * in the interest of the safety of persons so employed." Nothing in this first section of the act has any direct reference to owners, operators, or contractors in relation to "tunnels, drifts, and other underground excavations." It might be said, however, that the duty may be inferred to permit the inspector of mines to enter and examine such excavations. This duty or obligation upon the part of owners or contractors is more specifically provided for in section 2, wherein the words "said act prescribed" appear. When reference is made to the act of March 24, 1909, as it became a law on that date, it will be found to contain practically all of the provisions respecting visitations and inspections of mines including the duty of operators to report accidents, and to remedy dangerous conditions called to their attention by the inspector, or suffer penalties for failure so to do. The expression in the title of the said act of 1931, "and to the duties, obligations, liabilities and penalties imposed by that act," lends support to the view that the Legislature designedly used language in portions of both the title and body of the act which in ordinary meaning would relate to one particular act. No persuasive reason suggests itself why the framers of the act, or the Legislature, should refer to one particular act by title and date, follow the same in one portion of the title and one section of the act with a reference to "all acts amendatory thereof and supplementary thereto," and then omit such reference after using words expressive of one particular act in another portion of the title and in two sections of the act, unless it was the intention only to give the inspector of mines all powers of entry, investigation, examination, and recommendation conferred upon him by the several acts referred to and to impose on owners, contractors, and operators of un-

derground works other than in strictly mining operations, the duties, obligations, and penalties by the specific act mentioned as originally enacted. In this connection it may be further noted that but few of the sections added to the original act of 1909 by the amendatory act of 1911, could have any application to underground works otherwise than in mining operations. If it had been the intention of the Legislature to extend all the provisions of the several acts mentioned, a much simpler title and body of an act could have accomplished such purpose leaving no doubt respecting what was intended to be accomplished.

A conclusive reason why the Legislature did not intend to impose any of the prohibitory or penal provisions of the said act of 1911, in the matter of underground works other than mining, appears we think from the language of section 5 of the act of 1931, which provides that the act "shall not become effective nor shall said deputy mining inspector be appointed" until those "engaged in the work * * * shall accept and continue under the provisions of the Nevada industrial insurance act."

Independent of the said act of 1931, it may be assumed that a contractor engaged in the work of the construction of Hoover Dam, plant, and appurtenant works could have availed itself of the provisions of the Nevada Industrial Insurance Act (Comp. Laws Nev. 1929, § 2680 et seq.). If a contractor might avail itself of such privilege, an impelling reason suggests itself why the state upon its part should protect itself and other beneficiaries of the insurance act by adequate inspection of the work as it progressed by an authority competent to observe, advise, and also to warn if necessary against danger detected. This we think accounts for the act adopted for the purposes as we have construed it.

■ It is urged upon the part of defendants that the act of 1931 was a police regulation for the protection of workmen, and that all provisions of the amendatory act of 1911, such as the one prohibiting the use of gasoline underground, except under conditions prescribed by an amendment made by the Legislature of 1913 (St. 1913, c. 224), which exceptions would not apply to the use of gasoline-propelled trucks, are intended for the protection of workmen and that the judgment of the Legislature in such matters is conclusive upon the court. Conceding that contention as a general proposition of law to be correct, and further conceding, for the

purpose of the situation which would then be presented, that it was the intention of the Legislature by the act of 1931, not only to make all provisions of the said act of 1909, but those of the amendatory act of 1911, applicable, we would then have a statute claimed to be for the protection of workmen, which would be in force in cases where owners, operators, or contractors elected to avail themselves of the state Industrial Insurance Act, and without any force in all other cases. If the use of gasoline underground may be dangerous, which is conceded, and its use, in the interest of the safety of workmen, should be prohibited or regulated according to circumstances, the Legislature has power to so regulate or prohibit, but in so doing it must observe the provisions of the state Constitution, and not make it a matter of the election of the employer whether the act shall or shall not apply. If the act of 1931 should be construed so as to make the act of 1911 apply in all its provisions, then we would have little hesitancy in saying that it would be void as violative of article 4, §§ 20 and 21, of the state Constitution, requiring all such laws to be of general and uniform operation throughout the state. We may assume the Legislature had this provision of the Constitution in view when it adopted the statute. It is a further very cogent reason for the construction which we have placed upon the act. It is a familiar rule of construction that if language used is ambiguous and susceptible of two constructions, one of which will render the act or section unconstitutional, that construction will be adopted which renders it valid.

Defendants do not admit the unconstitutionality or inapplicability of the act of 1931 to the tunnel operations of plaintiff, but without such admission they also contend that even if the act of 1931 should be held to be unconstitutional or inapplicable, the original act of 1909 as amended by the acts of 1911 and 1913, prohibiting the use of gasoline underground, would be applicable to the tunnels being constructed by the plaintiff. Even if we assume that the title of the original act creating the office of inspector of mines was sufficiently broad to justify the incorporation therein of the amendments of 1911 and 1913 above referred to, and that such amendments did not violate the Constitution of Nevada, it is clear that the intention of the Legislature was to control mining operations, and that the provision that "no gasoline should be used underground" except under prescribed conditions must be held to apply to such operations only. The fact that similar operations, such as tunnel work, might be subject to the same hazards as in the case of mines, does not justify the application of the section prohibiting the use of gasoline underground to something other than mines if it were the intention of the Legislature in the first place to apply the rule to mines only. If this matter of the applicability of the prohibition as to gasoline underground to tunnels is in doubt, under section 22 as originally added by amendment in 1911, the amendment of 1913 (St. Nev. 1913, c. 224 [Comp. Laws Nev. 1929, § 4229]) to section 22, which made an exception to the general rule prohibiting gasoline underground in favor of small gas engines in mines at not greater depths than 250 feet when appropriate provision was made to take care of the exhaust as required by the act, clearly shows that the intention was to confine the prohibition of the act to underground operation in mines. That is to say, the amended section 22 clearly applies to mines only. We would not be justified in extending the meaning of the Legislature beyond its original intent as expressed in the act of 1909 as amended in 1911 and 1913, even if it were clear that to do so would effectuate the real purpose of the Legislature in the earlier act. Even so, in the case at bar it is clear we are dealing with a situation which was not contemplated by the Legislature at all, where we have a tunnel 50 feet in diameter, capable of ventilation by fans, air shafts, pilot and adit tunnels, which obviate the danger due to the exhaust from a gas engine. We think it is clear that in the amendment of 1913 there was no intention to extend the provisions of the amendment to tunnels not in mines. This was evidently the view of the Legislature when it enacted the statute of 1931.

As the construction which we have placed on the said acts of 1909, 1911, 1913, and 1931 makes inapplicable to the work being prosecuted by plaintiff the provisions of the state statutes relative to the use of gasoline underground in mining operations, it is unnecessary to determine the constitutional questions urged, which otherwise would, in whole or in part, require determination.

Plaintiff is entitled to a decree for an injunction as prayed for. It is so ordered.