SHERIDANVILLE, Inc., a corporation, Plaintiff,

v.

BOROUGH OF WRIGHTSTOWN, a municipal corporation, I. Haines Crowshaw, Collector of Taxes for the Borough of Wrightstown, Township of Springfield, a municipal corporation, and R. J. Beazley, Collector of Taxes for the Township of Springfield, Defendants,

County of Burlington, Intervener,

New Hanover Township Board of Education, Intervener.

FORT DIX APARTMENTS CORPORATION, a corporation, Plaintiff,

v.

BOROUGH OF WRIGHTSTOWN, a municipal corporation and I. Haines Crowshaw, Collector of Taxes for the Borough of Wrightstown, Defendants,

County of Burlington, Intervener,

New Hanover Township Board of Education, Intervener.

Civ. Nos. 387, 621.

United States District Court,
D. New Jersey.
Sept. 14, 1954.

Evoy, Feinberg & Deighan, Alexander Feinberg, Camden, N. J., for plaintiff, Sheridanville, Inc.

Madison S. DuBois, Camden, N. J., for plaintiff, Fort Dix Apartments Corp.

Alfred M. Bitting, Burlington, N. J., for defendants, Borough of Wrightstown and I. Haines Crowshaw, Collector.

Dimon, Haines & Bunting, Mount Holly, N. J., Martin L. Haines, for defendants, Township of Springfield and R. J. Beazley, Collector.

Parker, McCay & Criscuolo, Robert W. Criscuolo, Mount Holly, N. J., for North Hanover Township Board of Education, intervener.

William H. Wells, Bordentown, N. J., for County of Burlington, intervener.

FORMAN, Chief Judge.

Plaintiffs, Sheridanville, Inc., and Fort Dix Apartments Corporation, are New Jersey corporations. Each leased land from the United States for the purpose

of constructing an apartment house project on its reservation at Fort Dix, Burlington County, New Jersey. After the structures were completed the Borough of Wrightstown, a municipal corporation, through its tax collector, I. Haines Crowshaw, and the Township of Springfield, through its tax collector, R. J. Beazley, in the case of plaintiff, Sheridanville, Inc., sought to collect municipal taxes from it and in the case of plaintiff, Fort Dix Apartments Corp., the said Borough of Wrightstown and its collector likewise sought to collect taxes. Thereupon each corporation filed a complaint in this court against the respective municipalities and collectors above named, which and who sought taxes from it.

The complaint of Sheridanville, Inc. is in two counts. In the first count it alleges, among other things, that on March 30, 1951, the then Secretary of the Army (now Secretary of Defense) of the United States, through his agent executed a lease agreement with it wherein there was leased to it approximately 35 acres of land for a term of 75 years at an annual rental of $1,150, and by the terms thereof it was required to erect and maintain a housing project of 300 units on a site at Fort Dix within the exclusive jurisdiction of the United States; that pursuant to the said agreement it applied for a mortgage under the provisions of subchapter VIII of Title 12 of the National Housing Act of August 8, 1949, 12 U.S.C.A. § 1748 et seq., and after constructing the housing project leased the apartments to military and civilian personnel as designated by the Commanding Officer of the Fort Dix Military Reservation; that the land leased to it was formerly mainly in the Township of New Hanover, and partly in the Township of Springfield, but pursuant to the provisions of the laws of the State of New Jersey that portion of the land lying within the boundaries of the Township of New Hanover was annexed to the Borough of Wrightstown, N. J. Laws of 1951, c. 182; that no municipal benefits, services or utilities for the project are furnished by the defendant municipalities; that certain facilities are furnished by the military authorities at Fort Dix, electric service is furnished by private public utility corporations and the education of the children of the tenants of the housing project is provided by the Board of Education of the Township of Pemberton, which is fully reimbursed by the United States pending the provision of facilities in the future by the Federal Security Agency, Department of Education of the United States; that the Commissioner of Education of New Jersey has denied the said children admission to local schools upon the grounds that the occupants of the project do not reside in the local school district within the provisions of the laws of New Jersey and the occupants of the housing project have been denied the right to vote because of their military status and nonresidence within the jurisdiction of the State of New Jersey; that there have been sought to be collected by the defendant municipalities the following taxes:

Borough of Wrightstown—Assessment on

|  | Land | Buildings | Total | Tax |
|---|---|---|---|---|
| 1952 | $5,250 | $307,500 | $312,750 | $15,704.55 |

Township of Springfield—Assessment on

| Personality [1] | Tax |
|---|---|
| $19,500 | $1,415.70 |

1. Later corrected by judgment of Burlington County Tax Board of November 14, 1953, to a real estate assessment in the sum of $27,375.

that similar taxes have been levied by the said defendant municipalities for the year 1953; that plaintiff has paid to the defendant Borough of Wrightstown $10,559.29 under protest and additional moneys for assessments in 1952 and 1953; that the executions of said taxes are illegal and void and the plaintiff seeks recovery of the moneys paid and an injunction restraining the collection of any other moneys alleged by the municipalities to be due and of any other future assessments or taxes.

In Count 2 of the complaint levelled at the Borough of Wrightstown and its tax collector plaintiff, Sheridanville, Inc., among other things alleges that it leased apartment units to military and civilian employees at rental rates governed and determined by the Commissioner of the Federal Housing Administration and approved by the military authorities at Fort Dix; that by the terms of its agreement with the then Secretary of the Army its lease is for the improved land described therein and plaintiff did not lease the improvements which are now erected thereon because they were not in existence at the time of the execution of the lease, by the terms of which they are not a part of the leasehold estate, but title to them is expressly vested in the plaintiff; that the plaintiff is a mere licensee of the United States and because of the limitations imposed upon plaintiff under its agreement it is in effect a management agreement not subject by taxation by the defendants; that by collateral agreements the plaintiff is entitled to a proportionate increase in the maximum rental rates to offset increases in the operating costs of said housing units and the burden of taxes imposed by the Borough of Wrightstown will fall directly on the tenants of said housing project and plaintiff prays for relief against the Borough of Wrightstown similar in nature to that requested in Count 1.

The complaint of the Fort Dix Apartments Corp. is in one count and is similar to that of Sheridanville, Inc. Details of its agreement vary in that its lease was alleged to have been executed April 24, 1952 for approximately 28 acres of land at a yearly rental of $100; that title to the buildings which have been constructed remain in the United States and plaintiff owns neither land nor buildings on which the taxes have been levied for the year 1953 in the total sum of $18,150.72, representing an assessment on the land of $4,050 and on improvements for $306,750.

The County of Burlington and the New Hanover Township Board of Education sought and were granted permission to intervene in each case. They and the defendants filed answers and the issues joined came to trial upon stipulations of facts signed by all of the parties and oral testimony offered at a hearing.

Pertinent portions of stipulations filed by the parties in both suits follow:

"For the purpose of alleviating the acute housing shortage which existed at the Fort Dix Military Reservation at Fort Dix, New Jersey, and to increase rental housing accommodations available to military and civilian personnel at said military reservation, the Secretary of the Army (now Secretary of Defense) of the United States of America, through his duly authorized agent, on March 30, 1950 [as to Sheridanville, Inc., and on April 24, 1952 as to Fort Dix Apartments Corp.] executed a lease agreement, pursuant to authority under the Act of August 5, 1947, Chapter 493, Section 1 and Section 6, 61 Stat. 774 and 61 Stat. 775, 10 U.S.C. 1270 and 1270d, and also Subchapter VIII of Title 12 of the National Housing Act of August 8, 1949, 12 U.S.C. 1748 &c., with the plaintiffs wherein the United States of America, among other things, leased to the plaintiff the following described lands:"

\* \* \* \* \* \*

"The above described lands are all within the territorial limits of the Fort Dix Military Reservation at

Fort Dix, New Jersey." (Paragraph 2 in each stipulation)[2]

"The agreement, a copy of which is attached hereto as Exhibit A, leased to the plaintiff said lands for a term of 75 years from the date thereof at the annual rental of $1,150.00, [in the case of Sheridanville, Inc., and $100 in the case of Fort Dix Apartments Corp.] and required the plaintiff, among other things, to erect, maintain and operate a housing project, consisting of approximately 300 units, to be located on the Fort Dix Military Reservation at Fort Dix, New Jersey." (Paragraph 3 in each stipulation.)

"Pursuant to the terms of said Agreement, the plaintiff applied for a mortgage under the provisions of Subchapter VIII of Title 12 of the National Housing Act of August 8, 1949, 12 U.S.C. 1748 &c., and thereafter erected and constructed a housing project consisting of approximately 300 units, and after completion thereof, leased said apartment units to such military and civilian employees as designated by the Commanding Officer of the Fort Dix Military Reservation. At the present time all of said 300 units are leased to military personnel stationed on Fort Dix Military Reservation, and the said units are occupied by the said military personnel and their families." (Paragraph 4 of Sheridanville, Inc. stipulation and Paragraph 8 of Fort Dix Apartments Corp. stipulation.)[3]

"The land leased to the plaintiff was formerly situate mainly in the Township of New Hanover, County of Burlington, and State of New Jersey, and partly in the Township of Springfield, County of Burlington and State of New Jersey, but pursuant to the provisions of the laws of the State of New Jersey, Laws of 1951, Chapter 182, that portion of the land lying within the boundaries of the Township of New Hanover was annexed to the Borough of Wrightstown." (Paragraph 5 of Sheridanville, Inc. stipulation and Paragraph 9 of the Fort Dix Apartments Corp. stipulation, in which, however, no reference is made to the Township of Springfield.)

"Title to all or a portion of said lands was acquired by the United States of America by condemnation proceedings in the District Court of the United States for the District of New Jersey entitled United States of America v. Wilbur G. Davis, et al., No. M130a, wherein judgment on the Declaration of Taking was entered on October 16, 1940 and recorded in the Office of the Clerk of Burlington County in Deed Book 926, Folio 446. Judicial notice of said proceedings may be taken by the Court." (Paragraph 6 in each stipulation.)

"By letter dated December 31, 1941 Honorable Henry L. Stimson, then Secretary of War, notified Honorable Charles Edison, then Governor of New Jersey, that the United States accepted jurisdiction over the said lands acquired by condemnation proceedings effective as of January 8, 1942 at 10:00 A.M. which letter stated that the transfer of such jurisdiction had been authorized by virtue of the provisions of the Act of Legislature of New Jersey appearing as Sections 1, 2 and 3 of Title 52, Chapter 30, Revised Statutes of New Jersey, 1937. By endorsement dated January 2, 1942, Honorable Charles Edison, then Governor of New Jersey, acknowledged receipt of the said letter. * * *" (Paragraph 7 in each stipulation.)

"Water and sewerage facilities, garbage and trash collections, snow and road maintenance are provided by the military authorities at the Fort Dix Military Reservation and

---

2. The last sentence appears only in the stipulation in the case of Sheridanville, Inc.

3. The last sentence appears only in the Fort Dix Apartments Corp. stipulation.

charged to the plaintiff on the basis of actual cost; fire protection is provided by the military authorities at the Fort Dix Military Reservation and charged to the plaintiff at a nominal cost; police protection is provided without charge by the United States Army; electric service is provided by public utility corporations and is charged to plaintiff at prevailing rates; street lighting within the project has been erected and is operated and maintained exclusively by the plaintiff. Said services are not furnished by the Borough of Wrightstown. The said Borough of Wrightstown or Township of Springfield has not been requested to furnish any such services. The Township of Springfield and or, Intervener, New Hanover Township Board of Education reserve the right to offer proof of instances where services have been rendered to plaintiff, and plaintiff shall have the right to rebut any such proof." (Paragraph 8 in Sheridanville, Inc. stipulation and Paragraph 10 in Fort Dix Apartments Corp. stipulation.)

"In 1951, the defendant, Borough of Wrightstown, through its agent, I. Haines Crowshaw, Collector of Texas, for the Borough of Wrightstown, levied a real estate assessment for 1952 against the plaintiff on real estate purportedly owned by the plaintiff and located within the Borough of Wrightstown; the defendant, Borough of Wrightstown, through its tax assessors, evaluated land purportedly owned by the plaintiff for the sum of $5,250.00 and evaluated buildings owned by the plaintiff for the sum of $307,500.00, for a total valuation of land and improvements in the sum of $312,750.00; the total tax assessment by the defendant, Borough of Wrightstown on the property of the plaintiff amounts to the sum of $15,074.55 for the year 1952; said defendants in 1952 levied a similar assessment under similar circumstances on real property of the plaintiff for the year 1953 for a total tax assessment of $18,264.60." [The total tax assessment against Sheridanville, Inc. for 1953 amounted to $18,150.72] (Paragraph 9 in Sheridanville, Inc. stipulation and Paragraphs 11 and 14 in Fort Dix Apartments Corp. stipulation.)

"The plaintiff has paid to the defendant, Borough of Wrightstown, the sum of $10,559.29, under protest, for the tax assessment for 1952, and upon the representation by said defendant that said taxes were valid, the plaintiff has also paid additional moneys under similar circumstances for tax assessments for both 1952 and 1953." (Paragraph 10 of Sheridanville, Inc. stipulation.)

"In 1951, the defendant, Township of Springfield, through its agent, R. J. Beazley, Collector of Taxes for the Township of Springfield, levied an assessment on personal property owned by the plaintiff in the housing project for the year 1952 and has evaluated the personal property at the sum of $19,500.00; the total tax assessment by said defendants amounts to the sum of $1,415.70 for the year 1952. Said defendants have levied a similar tax against the personal property of the plaintiff for the year 1953, in the sum of $1,388.40, but the plaintiff has made no payment toward either of said personal property taxes." (Paragraph 11 of Sheridanville, Inc. stipulation.)

"The land upon which the housing project of the plaintiff is located is situated mostly within the boundaries of the Borough of Wrightstown and partly within the boundaries of the Township of Springfield." (Paragraph 12 of Sheridanville, Inc. stipulation.)

"The payments made by the plaintiff to the Borough of Wrightstown were made under protest." (Paragraph 13 of the Sheridanville, Inc. stipulation.)

"A rent increase has been authorized by the Federal Housing Commissioner and an agreement concerning said increase has been executed between plaintiff, the Federal Housing Commissioner, and Camden Trust Company, mortgagee, a true copy of which agreement is hereto attached as Exhibit 'E'." Paragraph 13 of Fort Dix Apartments Corp. stipulation.)

"Plaintiff maintains no offices in the Borough of Wrightstown." (Paragraph 14 in Sheridanville, Inc. stipulation and Paragraph 12 in Fort Dix Apartments Corp. stipulation.)

"The facts contained in two letters by Donald C. DeHart, Field Representative, Department of Health, Education and Welfare, Regional Office, Region II, 42 Broadway, New York 4, New York, dated January 20, 1954, and January 27, 1954, copies of which are attached hereto and designated as Exhibits 'B' and 'C', [in Sheridanville, Inc. and 'F' and 'G' in Fort Dix Apartments Corp.] are correct insofar as concerns the number of pupils, where they come from and where they attend, and the amounts of monies paid and to whom paid. Anything by way of legal conclusions in said letters are not stipulated. * * * Intervener, New Hanover Township Board of Education reserves the right to offer proof regarding the school problem concerning plaintiff's project and the history of the transition of school arrangements for the Fort Dix personnel from the New Hanover Township Board of Education to the Pemberton Township Board of Education and plaintiff shall have the

right to rebut any such proof." (Paragraph 15 in each stipulation.)

"The question of the right of the residents of the apartment units in question to vote is a legal question and all parties reserve the right to argue the question of law." (Paragraph 16 in each stipulation.)

"The taxes collected by the Borough of Wrightstown from the plaintiff are disbursed approximately in the proportions of 5% for local purposes, 45% for school purposes and 50% to the County of Burlington." (Paragraph 17 in each stipulation.)

"A true and correct copy of the Budget of the County of Burlington as amended for the year 1953 is attached hereto as Exhibit 'D' [in Sheridanville, Inc. and 'H' in Fort Dix Apartments Corp.]." (Paragraph 18 in each stipulation.)

The principles involved in these two cases are identical and they will be treated as one case in the following discussion.

The New Jersey Statute under which the defendants and interveners claim the taxation is authorized is an Act of the Legislature passed in 1949 and is as follows:

"When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate." N.J.L.1949, c. 177, p. 566, § 1, N.J.S.A. 54:4-2.3.

While broad in its language it would appear from the statement of purpose attached to New Jersey Senate Bill No. 148,[4] from which the Act originated that

4. It is as follows:
"Statement
"The purpose of this Act is to permit Municipalities to levy and assess taxes on exempt property when the same is leased for private use. In many Municipalities the Federal government leases its exempt property to business and indus-

try while the same remains exempt from taxation.
"The first section of this Act is taken from the Illinois Annotated Statutes (Chapter 120, Section 507). It has been upheld by the Courts of Illinois.
"Many other states tax the leasehold estate in lands leased from the United

property of the kind under discussion here was in mind at the time of the adoption of the legislation.

■ But where the lands are within the exclusive jurisdiction of the United States, under Article I, Section 8, Clause 17 of the Federal Constitution,[5] they are immune from taxation by a state and even private property located thereon is not subject to taxation by a state. Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091.

Since the lands in question in this case are indubitably within the exclusive jurisdiction of the United States a close application of the foregoing principle would make invalid any effort upon the part of the state or its subdivisions to reach the plaintiffs' properties by taxation. Therefore it becomes necessary to ascertain whether the United States has relinquished its exclusive jurisdiction over these properties to the extent sufficient to give the right to tax them.

Each lease contained the following statement concerning the authority upon which it was purported to be based:

"That, under authority of the Act of August 5, 1947 (10 U.S.C. § 1270) and Title VIII of the National Housing Act, as amended (12 U.S.C. §§ 1748–1748h), the Secretary of the Army has determined that the lease of the hereinafter described premises will effectuate the purposes of the said Title VIII, * * *."

Of course that mere recital in the lease is not conclusive as to the extent of the statutory authority referred to therein and it is necessary to examine the legislation itself to determine the nature of the power that was granted.

The authority for the Government's contracts with the plaintiffs is derived from the Military Housing Insurance Act of August 8, 1949 (known as the Wherry Act), 63 Stat. p. 570, 12 U.S.C.A. § 1748. This was an amendment adding Chapter VIII to the National Housing Act, 48 Stat. 1246, 12 U.S.C.A. § 1701 et seq. It provided, among other things, for the Secretaries of the Armed Forces to grant leases for land for military housing purposes on or adjacent to military reservations. This was to be done to effectuate the purpose of a scheme for financing the construction thereof through the insurance by the Commissioner of the Federal Housing Administration of mortgages made by the lessees to private financial institutions up to 90% of the cost of construction. A fund for such purpose was to be created out of premiums paid for such insurance and means were provided for the temporary operation of the fund. There is in this legislation a reference to an earlier federal statute wherein the Secretaries of the Armed Forces were authorized in 1947, among other things, to grant leases for real and personal property in the way of plants and equipment that had been used in the manufacture of war essentials, to private parties for periods of not more than five years, where the use of the plant and its machinery would not be materially altered so that should it again be required it could quickly revert to its original purpose of manufacturing war necessities. This reference in the Military Housing Insurance Act is as follows:

States as the personal property of the lessee. To tax the leasehold estate as real estate avoids the complications inherent in appraising the value of the lease as personal property. A Statute is needed for that purpose. A tax on leasehold estates in property owned by the United States is not considered as a tax on the United States (see [City of Chicago v. University of Chicago, 302 Ill. 455, 134 N.E. 723], 23 A.L.R. page 248)."

5. "To exercise exclusive Legislation in all

Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; * * *." U.S. Const. art. I, § 8, cl. 17.

"Whenever the Secretary of the Army, Navy, or Air Force determines that it is desirable to lease real property within the meaning of the Act of August 5, 1947 (61 Stat. 774), to effectuate the purposes of this title, the Secretary concerned is authorized to lease such property under the authority of said Act upon such terms and conditions as in his opinion will best serve the national interest without regard to the limitations imposed by said Act in respect to the term or duration of the lease, and the power vested in the Secretary of the Department concerned to revoke any lease made pursuant to said Act in the event of a national emergency declared by the President shall not apply. * * *" 63 Stat. 576, 12 U.S.C.A. § 1748d.

The 1947 legislation above mentioned commences with the following language:

"That whenever the Secretary of War or the Secretary of the Navy shall deem it to be advantageous to the Government he is authorized to lease such real or personal property under the control of his Department as is not surplus to the needs of the Department within the meaning of the Act of October 3, 1944 (58 Stat. 765), and is not for the time required for public use, * * *." 61 Stat. 774, 10 U.S.C.A. § 1270.

See the legislative histories of these 1947 and 1949 Enactments respectively in the U.S.Code of Congressional Service, 80th Congress, First Session 1947, p. 1592 and 81st Congress, First Session 1949, p. 1757.

The 1947 legislation contains the following direct recognition of the liability of property leased under it for taxes assessed by state or local authorities as follows:

"The lessee's interest, made or created pursuant to the provisions of sections 1270–1270b, 1270d of this title, shall be made subject to State or local taxation. Any lease of property authorized under the provisions of said sections shall contain a provision that if and to the extent that such property is made taxable by State and local governments by Act of Congress, in such event the terms of such lease shall be renegotiated." 10 U.S.C.A. § 1270d.

It is the defendants' contention [6] that this recognition is carried from the 1947 to the 1949 legislation and constituted a recession by the United States to the State of New Jersey and its subdivisions of the right to tax property leased under the Military Housing Insurance Act. This contention cannot be approved since it appears that the reason for the reference in the 1949 legislation to the 1947 legislation was to define the types of property which the Secretaries could use for the purpose of the Military Housing Insurance Act and that was such property as was described in the 1947 legislation as was "under the control of his Department as is not surplus to the needs of the Department within the meaning of the Act of October 3, 1944 (58 Stat. 765), and is not for the time required for public use, * * *."

While no direct provision for the payment by lessees of local taxes appears in the Military Housing Insurance Act, as in the enactments authorizing the leasing of standby facilities, there is the following provision:

"Nothing in this subchapter shall be construed to exempt any real property acquired and held by the Commissioner under this title from taxation by any State or political subdivision thereof, to the same extent, according to its value, as other real property is taxed." 12 U.S.C.A. § 1748f.

And the leases in suit here contain the following provision:

"That the Lessee shall pay to the proper authority, when and as the same becomes due and payable, all

---

6. The separate contentions of the defendants and interveners will be considered collectively as applying to all and will be referred to herein as "defendants'" contentions or arguments.

taxes, assessments, and similar charges which, at any time during the term of this Lease, may be taxed, assessed or imposed upon the Government or upon the Lessee with respect to or upon the leased premises. In the event any taxes, assessments or similar charges are imposed with the consent of the Congress of the United States upon the interest of the Government in the leased premises (as opposed to the leasehold interest of the Lessee therein), this Lease shall be renegotiated so as to accomplish a reduction in the rental provided above, which reduction shall not be greater than the difference between the amount of taxes, assessments or similar charges and the amount of any taxes, assessments or similar charges which were imposed upon such Lessee with respect to his leasehold interest in the leased premises prior to the granting of such consent by the Congress of the United States and which shall not in any event be more than 50 per cent of the rental provided above. * * * " (Paragraph 8 of the Fort Dix Apartments Corp. lease attached to the stipulation, which is similar to paragraph 8 of the Sheridanville lease, likewise attached to the stipulation in that case.)

The foregoing statutory provision would appear to evidence the intent of the Government to manifest a relinquishment of this property from insulation from local taxation equally with what was legislated in the act authorizing the leasing of standby facilities. As was argued by the defendants certainly it could not have been the intention of the Congress that the Commissioner of the Federal Housing Administration in the event that he should be obliged to capture the property would be in a less preferred position with regard to local taxation than a private corporation such as either of the plaintiffs. While of course the lessees cannot bind the Government to a surrender of its immunity to local tax nevertheless they do show at least an acceptance of the eventuation of such a circumstance and they arrange to place the burden of its cost on the ultimate consumer—the lessees' tenants.

However, the plaintiffs argued that even though it should be granted that the exclusive jurisdiction of the United States was limited to the extent that local taxation was to be permitted the taxes have no justification here because the municipalities afforded no services as consideration for the taxes they sought to impose. The plaintiffs contended that services ordinarily afforded by municipalities were here provided by the United States or by private sources pursuant to the leases and that residents of the leased areas were not permitted to vote.

It is a fact that the Government supplies water and sewer facilities, garbage and trash collections, fire and police protection and snow and road maintenance and that the federal Government subsidizes the cost of the education of children in the local schools or provides educational facilities.

Of the taxes paid to the municipalities 5% is retained for local needs, 45% for school purposes and 50% to the County of Burlington. Admittedly the plaintiffs' tenants do not take advantage of those which duplicate the services rendered by the Government, but the defendants insist that there are many benefits that the inhabitants of the plaintiffs' projects enjoy, such as the maintenance of roads and law and order in the community in which the occupants of the projects must live, the services of the courts, the county clerk and law enforcement agencies, eligibility (after achieving residence qualification) for treatment at the tuberculosis hospital, mental hospital, welfare house, benefits of the child welfare, old age assistance, county extension service office, library, mosquito extermination commission, etc.

Some point was made of the charge by the plaintiffs that their tenants would not be permitted to vote. An attempt was made to prove this at the hearing,

but it proved abortive. However, while the military personnel may not vote under New Jersey law, it has not been shown that the eligible members of the family of military personnel and other civilians housed in the projects, otherwise qualified, will be deprived of voting.

While it is true that there must be the rendition of service to support a tax, the failure to take advantage of protection furnished out of the proceeds of tax funds is no reason for declaring the tax void when the protection is available. Rainier National Park Co. v. Martin, D.C.W.D.Wash.1937, 18 F.Supp. 481, and taxes otherwise lawful are not invalidated by the fact that the resulting benefits are unequally shared, Thomas v. Gay, 1898, 169 U.S. 264, 18 S.Ct. 340, 42 L.Ed. 740; Wagoner v. Evans, 1898, 170 U.S. 588, 18 S.Ct. 730, 42 L.Ed. 1154. Nor need the benefits of taxation be direct and tangible, Morton Salt Co. v. City of South Hutchinson, 10 Cir., 1947, 159 F.2d 897. See also Kiker v. City of Philadelphia, 346 Pa. 624, 31 A.2d 289, certiorari denied 320 U.S. 741, 64 S.Ct. 41, 88 L.Ed. 439.

Plaintiffs also rely upon an opinion of the Attorney General of the State of New Jersey (Formal Opinion 1951—No. 37) holding that the local authorities were without power to tax the properties in suit here and that the children living thereon are not residents in the local school district within the meaning of N.J.S.A. 18:14–1;[7] and upon an opinion of the Burlington County Court in the case of Borough of Wrightstown v. George Abbott (File No. 1142) on appeal from the judgment of the Municipal Court of the Borough of Wrightstown, which largely followed the aforesaid opinion of the Attorney General and held that the Borough of Wrightstown had no power to apply its building code requirements to one of the buildings in

these suits. Neither this opinion nor the opinion of the Attorney General is persuasive for there was no consideration in them of the implication of surrender by the Government of its insulation against taxation implicit in the Military Housing Insurance Act and the circumstances surrounding the use of the buildings by private interests as has been here discussed.

It is significant that the United States has itself sought no intervention in this case. At most the plaintiffs suggest that it is interested because these projects were encouraged by the Government to fill a need for housing of families of military and civilian personnel employed at Fort Dix and vicariously, so to speak, becomes a military purpose not to be regarded as subject to state or local taxation. The fact is that in no case will the burden of this tax fall upon the United States. Indeed, in the light of the terms and conditions of the plaintiffs' leases the title of the Government to these properties is only a paper one and to all intents and purposes they may well be considered the properties of the private corporate plaintiffs herein in view of the fact that their complete dominion over the properties extends for a period of seventy-five years—obviously a goodly life term for them. Furthermore, the tax will not fall upon the plaintiffs for it is noteworthy to observe that the arrangements call for tenants to absorb the burden by returning to the plaintiffs their proportionate share of any levy, escrow funds of the tenants money being already established to indemnify the plaintiffs for any payments they have made or will make if they are ultimately upheld as valid taxes.

The plaintiffs proffer the argument that their rental charges are rigidly controlled by the Commissioner of the Federal Housing Administration, but

---

7. "Public schools shall be free to the following persons over five and under twenty years of age;

"(a) Any person who is domiciled within the school district;"

\*   \*   \*   \*   \*

"Nonresidents of the school district, if otherwise competent, may be admitted to the schools of the district with the consent of the board of education upon such terms as the board may prescribe." N.J.S.A. 18:14–1.

this hardly seems relevant since ultimately the taxes under no circumstances will come out of their corporate pockets. Of course even though that were the case it is nothing unusual for owners of properties whose incomes are governmentally controlled, such as public utilities corporations, to be liable to state and local taxes nevertheless.

It is likewise provided in the leases that in the event that the military authorities do not exercise their prerogative to nominate military or civilian personnel and their families as tenants the plaintiffs shall have the right to rent apartments to tenants of their own choosing. Again, in view of the length of the leasing, such a completely private interest in the Government property may well come into being.

So we find that if the tax is sustained it will be a burden upon the individual tenants. Since taxes are accepted as an inevitable universal burden there would seem to be no reason why simply by the circumstances of governmental employment they should enjoy immunity.

Though by a different route I arrive at the same conclusion as did the Court of Appeals of Maryland in the case of Meade Heights, Inc. v. State Tax Commission, 1953, 202 Md. 20, 95 A.2d 280, when it was confronted by a problem similar to the cases at bar. There the court applied the statutory declaration of relinquishment of immunity from taxation contained in 10 U.S.C.A. § 1270d directly to taxation levied upon a housing project of the same nature as these, a theory with which I cannot agree. As set forth herein I have found that Congress contemplated the equivalent thereof concerning projects authorized by the Military Housing Insurance Act, 12 U.S.C.A. § 1748, and that the plaintiffs' property taxed by the defendants constitute private interests in Government property susceptible of taxation under the law of the State of New Jersey.

Plaintiffs cannot prevail in their actions and judgment must be awarded in favor of the defendants and denying the relief for which plaintiffs have prayed.

Orders for judgment should be submitted or settled by the defendants in accordance herewith.